UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Sales Board,

        Plaintiff,

v.                                        Civil No. 09-579 (JNE/FLN)
                                        ORDER

Pfizer, Inc.,

        Defendant.

David W. Larson, Esq., Martin & Squires, P.A., appeared for Plaintiff The Sales Board.

Paul C. Llewellyn, Esq., Kaye Scholer LLP, and Gary J. Haugen, Esq., Maslon Edelman Borman & Brand LLP, appeared for Defendant Pfizer, Inc.

      The Sales Board (Sales Board) asserts claims against Pfizer, Inc., for trademark infringement and unfair competition under state law and the Lanham Act, 15 U.S.C. §§ 1051-1141n (2006), based on Pfizer's alleged use of Sales Board's "ACTION SELLING" mark when training Pfizer's sales representatives. The case is before the Court on Pfizer's motion to dismiss Sales Board's Complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court grants in part and denies in part Pfizer's motion.

## I. BACKGROUND

      Sales Board trains and certifies salespersons in sales techniques. Sales Board identifies its training methods in the aggregate by the ACTION SELLING mark, which is registered on the Principal Register of the United States Patent and Trademark Office as Reg. No. 3,241,122 for use in connection with pre-recorded audio cassettes, audio CDs, video cassettes, DVDs featuring sales training information, computer software used for training in the field of sales, and for testing and assessments in connection with the training. Sales Board's methods are contained in

1

its "Action Selling" training materials and in a book series entitled the "Action Selling Book Series." The training materials and book series are the subject of several federal copyright registrations. Sales Board sells its books and training materials over the Internet and directly to corporations. It also conducts training for corporations.

Sales Board alleges in its Complaint that Pfizer purchased ACTION SELLING training materials from Sales Board in 2000. The essence of Sales Board's Complaint is contained in this allegation: "On information and belief, as part of the first national sales training meeting of 2002, Pfizer implemented its 'Strategic Selling Guide Featuring *Action Selling*,'" which "was created for the sales force that sells to physicians and physician offices." Sales Board also alleges that as of the date it filed suit, a video entitled "Action Selling—Sneak Preview" and subtitled "Pfizer Corporation Sales Training" could be found on the Internet at http://www.itweb-productions.com/video/reel-Pharmaceuticals-%20Sales-Training.htm.[1] According to the Complaint, the video's content includes training on sales techniques for Pfizer sales representatives. Sales Board further alleges that counsel for Sales Board sent a cease-and-desist letter to Pfizer on January 5, 2009, but Pfizer "has willfully refused to cease its infringing use of the ACTION SELLING Mark." Finally, Sales Board alleges that Pfizer "adopted and continues to use" the ACTION SELLING mark.

## II. DISCUSSION

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the plaintiff. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). Although a complaint is not required to contain detailed factual allegations,

---

[1] This link is now non-functioning.

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 1950 (quotation marks omitted).

Pfizer asserts, and Sales Board does not appear to contest, that Sales Board's state-law claims for unfair competition and trademark infringement should be analyzed under the same standard as the Lanham Act claims. The Court therefore analyzes Sales Board's state-law and Lanham Act claims under the Lanham Act standard. *See DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 n.3 (8th Cir. 2003) ("The district court concluded, and the parties appear to concede, that the state law claims are coextensive with the federal claims. As such, we do not discuss them independently.").

A.   **Action Selling—Sneak Preview Video**

Pfizer contends that Sales Board's claims should be dismissed insofar as they are based on the display of the "Action Selling—Sneak Preview" video on the Internet because Sales Board has not alleged that Pfizer has any connection to the ITWeb-Productions (ITWP) website on which the video was displayed, the publication of the video on the website, or the naming of the video. Sales Board responds that the ITWP website lists Pfizer as a "client."

"Each provision [of the Lanham Act] requires, as a prerequisite to finding liability, that the defendant 'use in commerce' the protected mark or a colorable imitation thereof." *Id.* at 936. Alternatively, a defendant may be vicariously liable as a joint tortfeasor for the trademark infringement of another if there is a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties, or exercise joint ownership or control over the infringing product.[2] *See Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992).

Here, the Complaint alleges that the Action Selling—Sneak Peak video was located on the ITWP website, not on a Pfizer website. The Complaint does not allege that the "use" of the Action Selling—Sneak Peak video on the ITWP website was use by Pfizer. Sales Board does not plead any facts from which the Court can reasonably infer that Pfizer and the entity controlling the ITWP website have a partnership, have authority to bind one another, or exercise joint control over the video. Sales Board's contention that Pfizer is listed as a "client" on the ITWP website is not contained within the Complaint. Even if the Court took judicial notice of the fact that the ITWP website lists Pfizer as a client, *cf. Muller-Paisner v. TIAA*, 289 F. App'x 461, 466 n.5 (2d Cir. 2008) ("Judicial notice may be taken of the defendants' website for the fact of its publication."), the Court cannot reasonably infer that Pfizer and the entity controlling the ITWP website have a partnership, have authority to bind one another, or exercise joint control over the video based on that listing.

At the hearing on Pfizer's motion to dismiss, Sales Board posited that ITWP could be a subsidiary of Pfizer, that Pfizer could be receiving a financial benefit each time the Action Selling—Sneak Peak video is viewed, that Pfizer could be using the video to recruit new sales

---

[2] Sales Board does not appear to assert a claim for contributory trademark infringement.

representatives, or that Pfizer could be using the video to train existing sales representatives. These allegations cannot be considered for purposes of this motion because they are not contained in the Complaint. Sales Board has failed to state a claim against Pfizer for trademark infringement or unfair competition based on the display of the Action Selling—Sneak Preview video on the ITWP website.

**B.     "Use in Commerce"**

Pfizer contends that the Complaint must be dismissed because it alleges only use internal to Pfizer, not public use, and such internal use does not constitute the "use in commerce" required to succeed on claims for trademark infringement and unfair competition. Sales Board responds that Pfizer's alleged use of the ACTION SELLING mark to train Pfizer's sales representatives satisfies the "use in commerce" requirement.

The Lanham Act provides that "a mark shall be deemed to be in use in commerce . . . on goods when . . . it is placed in any manner on the goods . . . and . . . the goods are sold or transported in commerce" or "on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce."[3] 15 U.S.C. § 1127; *see DaimlerChrysler*, 315 F.3d at 936 ("The statute also provides that a 'mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce.'" (quoting 15 U.S.C. § 1127)); *cf. Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) (concluding that the district court should have analyzed whether use was "in connection with a sale of goods or services" when

---

[3]     In this context, the "in commerce" requirement "refers to the impact that infringement has on interstate use of a trademark; it does not mean that an infringer is immune from prosecution under the statute so long as he keeps his infringement entirely within the confines of a state." *See Coca-Cola Co. v. Stewart*, 621 F.2d 287, 290 (8th Cir. 1980).

5

determining if use was commercial or noncommercial rather than focusing on "use in commerce" language because the "use in commerce" requirement "is simply a jurisdictional predicate to any law passed by Congress under the Commerce Clause"). Accordingly, if Pfizer's use of the ACTION SELLING mark in connection with its internal sales training constitutes a placement on goods or use in connection with the sale or advertising of services, then Pfizer's use constitutes "use in commerce" for purposes of the Lanham Act.

Pfizer asserts that the Eighth Circuit Court of Appeals held in *DaimlerChrysler* "that only use outside the four walls of a business constitutes 'use' for trademark purposes." The Court does not read *DaimlerChrysler* so broadly. Rather, the Eighth Circuit held that the licensing of the telephone number 1-800-637-2333, one alphanumeric translation of which is 1-800-MERCEDES, did not constitute "use in commerce" for purposes of the Lanham Act. 315 F.3d at 936-37. In so holding, the court relied on the fact that the defendant licensed only the telephone number, which was "neither phonetically nor visually similar enough to the [Mercedes trademarks] such that it could be considered a reproduction or a colorable imitation thereof," and concluded that the defendant "did not actually 'use' Mercedes' marks." *Id.* at 937-39. In short, *DaimlerChrysler* turned on whether the defendant was using the mark at all, not on the character of the defendant's use.

Sales Board cites *Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp. 2d 502 (E.D. Va. 2003), in support of its contention that Pfizer's use of the ACTION SELLING mark to train its sales representatives constitutes "use in commerce" for purposes of trademark infringement and unfair competition. In *Huthwaite*, the plaintiff Huthwaite, Inc., provided sales training seminars and related publications to individual and corporate customers nationwide. 261 F. Supp. 2d at 504. Huthwaite held federal trademark registrations for the marks SPIN

6

SELLING and SPIN. *Id.* at 505. The defendant expressed an interest in purchasing sales force training services from Huthwaite in 2000, but ultimately did not purchase any services. *Id.* About a year later, the defendant hired a senior vice president of sales who was familiar with Huthwaite's materials and theories and had access to Huthwaite's training seminars and materials during his previous employment. *Id.* at 505-07. The defendant then began training its sales staff in the "SPIN Selling" methods using the SPIN and SPIN SELLING marks. *Id.* at 505-06, 512.

The defendant moved for summary judgment on the ground that its internal use of the SPIN and SPIN SELLING marks to train its employees was not use in connection with services as required by the Lanham Act. *Id.* at 512. Resolution of this issue required the court to determine the meaning of "service," which is not defined in the Lanham Act. *Id.* at 512-15. The court adopted the Second Circuit's definition of service as "involv[ing] 'the performance of labor for the benefit of another.'" *Id.* at 512 (quoting *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 138 (2d Cir. 1999)). The *Huthwaite* court also found persuasive the *Morningside* court's conclusion that an activity constitutes providing a service within the meaning of the Lanham Act if it provides valuable benefits to "others," provided those "others" are third parties. *Id.* at 513.

The court then considered the meaning of "other" or "another," observing that the "question generally arises with regard to whether shareholders, association members, or employees are 'others' such that the Lanham Act reaches a company's use of an infringing mark with respect to these groups." *Id.* The court noted that "most courts have rejected the notion that everything that occurs internally within a corporation or other entity cannot constitute a service to 'others,'" but instead "have sensibly addressed the question by considering the Lanham Act's

7

purpose, namely, 'to protect the *public*'" when relying on the trademark and to protect the trademark owner's investment in presenting his trademark and product to the public. *Id.* at 513-14 (quoting *In re Canadian Pac.*, 754 F.2d 992, 994 (Fed. Cir. 1985)). Therefore, the determination of whether a service is provided to "another" turns on whether the recipients of the service "constitute 'a segment of the public which purchases and benefits from a service provided by the owner of the mark.'" *Id.* at 514 (quoting *In re Canadian Pac.*, 754 F.2d at 994). The court then denied the defendant's motion for summary judgment because the defendant's employees received a benefit from their sales training—the SPIN Selling method—and were part of the relevant buying public in that they were free to seek sales training on their own, could individually purchase Huthwaite's services, and could be potential future customers of Huthwaite if they left the defendant's employment.[4] *Id.* at 515.

As demonstrated by the preceding description, the facts and arguments presented *Huthwaite* are very similar to those presented here. Moreover, the Court finds the emphasis in *Huthwaite* on whether the recipients of a service constitute the "relevant buying public," rather than whether the use was "internal," to be well-reasoned and persuasive. Pfizer acknowledges that "exposure to the consuming public" is a prerequisite to a finding of trademark infringement, but apparently assumes that because the use alleged in the Complaint is internal to Pfizer, it is not public. For purposes of the Lanham Act, however, internal use does not necessarily equate to non-public use. *See id.* ("[J]ust because an activity is physically performed 'in-house' does not mean that it is beyond the reach of the Lanham Act, as a segment of the relevant public may

---

[4] Pfizer argues that *Huthwaite* is distinguishable because the *Huthwaite* defendant's use was part of a "major sales transformation" and the *Huthwaite* defendant had an employee turnover as high as 60% a year, whereas Sales Board's Complaint contains no such allegations. The Court is not persuaded. The pleading standard of Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations. *Iqbal*, 129 S. Ct. at 1949.

be found within the entity performing the service."); *cf. SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*, 455 F. Supp. 2d 1347, 1366-67 (N.D. Ga. 2006) (rejecting argument that plaintiff could not show consumer confusion where accused materials were only distributed internally to the defendant's employees because the defendant's employees were "not 'stripped . . . of their status as members of the public' by virtue of their employment with defendant," but rather were "the very members of the public that comprise[d] the target market for plaintiff's services" (quoting *Huthwaite*, 261 F. Supp. 2d at 514)).[5]

Pfizer contends that *Huthwaite* is contrary to the Eighth Circuit's decision in *DaimlerChrysler* and to the weight of authority. The Court disagrees. As previously explained, *DaimlerChrysler* turned on whether the defendant "actually" used the Mercedes marks, not on the character of the use. In addition, the district court cases cited by Pfizer are distinguishable because none of them involved use of the protected mark in connection with the sale or advertising of goods or services to the relevant buying public. For example, in *Cormack v. Sunshine Food Stores, Inc.*, the defendant's use of the plaintiff's employee honesty questionnaires that included the plaintiff's trademark when testing potential employees was not use "in connection with the sales of goods and services" because the questionnaires were "clearly not goods or services . . . distributed to the public." No. 84-2963, 1987 WL 46890, at *2-3 (E.D. Mich. May 1, 1987). Potential employees are not part of the relevant buying public for methods of testing the honesty of potential employees.

---

[5] Pfizer contends that *SCQuARE* is inapplicable because it involved claims under Georgia law, not the Lanham Act. The Court does not find this to be a meaningful distinction because the standards governing trademark infringement and unfair competition claims under Georgia law "are similar, if not identical, to those under the Lanham Act." *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1539 (11th Cir. 1985); *see Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F. App'x 899, 902 n.4 (11th Cir. 2007) ("[T]his Court has noted that a trademark infringement claim under Georgia law is reviewed under the same standards as a claim under the Lanham Act.").

In *Cognotec Services Ltd. v. Morgan Guaranty Trust Co. of New York*, the defendant bank's use of a computer program that enabled it to offer automated foreign exchange service to its currency trading customers was not use "in commerce." 862 F. Supp. 45, 48, 50-51 (S.D.N.Y. 1994). The accused program in *Cognotec*, however, was not sold or advertised to members of the relevant buying public—entities wishing to provide currency trading services to their customers. Similarly, in *Meta-Film Associates, Inc. v. MCA, Inc.*, the defendants' consideration of "Frat Rats" as a possible title for a television series could not support an unfair competition claim under California law because the defendants never used "Frat Rats" publicly, either in advertising or in screen credits, in connection with the series. 586 F. Supp. 1346, 1361 (C.D. Cal. 1984). The defendant's use was not use in connection with the sale or promotion of the television series to the relevant buying public of viewers or potential viewers of the series.

Finally, in *St. Louis University v. Meyer*, the defendant's incorporation of a non-profit entity named "The University News, a Student Voice Serving Saint Louis University Since 1921," the public records of the incorporation and dissolution of the entity, and the use of "University News" letterhead when communicating with the Secretary of State did not constitute "use in commerce" because there was no evidence that the defendant used the marks in public. No. 07-1733, 2008 WL 5412263, at *2-5 (E.D. Mo. Dec. 24, 2008). The court analogized the defendant's use to a company's internal use of a trademark in a manner that does not communicate it to the public. *Id.* at *4. *Meyer* is distinguishable because, here, the Court can reasonably infer that Pfizer's sales representatives would purchase and benefit from Sales Board's training methods and materials, and therefore that Pfizer's alleged use of the ACTION SELLING mark when training its sales representatives constitutes communication of the mark to the relevant buying public.

Pfizer's reliance on two treatises on trademark law is similarly unpersuasive because the portions of the treatises quoted by Pfizer cite to *Meta-Film* and *Cormack*, which are distinguishable for the reasons stated above.[6] *E.g.*, 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 23:5 (4th ed. 2009) (citing *Meta-Film* for the proposition that "[i]n-house, private use where the trademark is not seen publicly is not sufficient to constitute infringement"); 4 Louis Altman & Malla Pollack, *Callmann on Unfair Competition, Trademarks & Monopolies* § 22:25 n.1 (4th ed. 2009) (relying on *Cormack* to support the proposition that "a defendant who does not sell, but merely uses internally within his own company, the trademarked product of another, is not a trademark infringer or unfair competitor by virtue of such use"). Further, *Callmann* discusses *Huthwaite* extensively in the "Varieties of infringement" section, explaining that *Huthwaite* is distinguishable from *Cormack* because the "potential employees in *Cormack* were plainly not part of the relevant market" and the psychological screening did not benefit the potential employees. 4 Altman & Pollack, *Callmann on Unfair Competition, Trademarks & Monopolies* § 22:7.

In short, the Court finds *Huthwaite* to be on point, persuasive, and consistent with Eighth Circuit authority and the leading treatises on trademark law, while the cases cited by Pfizer are readily distinguishable. Sales Board's claims are not barred on the ground that Pfizer's alleged internal use of the ACTION SELLING mark to train its sales representatives is not "use in commerce."

---

[6] *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005), also mentioned in the cited portions of the treatises, is distinguishable for the same reason—the alleged use was not communicated to the public.

11

## C. Statute of Limitations

The Court turns to Pfizer's argument that dismissal of the Complaint is warranted because Sales Board's claims are barred by the statute of limitations. The parties agree that the applicable statute of limitations is six years. *See Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1077 (D. Minn. 2007). Sales Board filed its Complaint on March 11, 2009; the cut-off date for the statute of limitations is March 11, 2003. Pfizer asserts that Sales Board's claims are barred because the only act alleged in the Complaint attributable to Pfizer is the use of the "Strategic Selling Guide Featuring *Action Selling*" at the first national sales training meeting in 2002.

"Bar by a statute of limitations is typically an affirmative defense, which the defendant must plead and prove." *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008). "[T]he possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Id.* Here, the Complaint alleges that "[o]n information and belief, as part of the first national sales training meeting of 2002, Pfizer implemented its 'Strategic Selling Guide Featuring *Action Selling*.'" The Court is required to assume the veracity of this factual allegation and determine whether it plausibly gives rise to an entitlement to relief. *See Iqbal*, 129 S. Ct. at 1950. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In the Court's experience, and as a matter of common sense, it is plausible that a selling guide "implemented" at a large corporation's national sales training meeting in 2002 would still be in use as of March 11, 2003. Because the Complaint does not establish that the limitations period has run, the Court denies Pfizer's motion to dismiss on statute of limitations grounds.

The Court recognizes, however, that Sales Board's allegation that the selling guide was implemented in 2002 is a slender reed upon which to proceed. Therefore, Sales Board shall conduct expedited discovery into the duration of Pfizer's alleged use of the ACTION SELLING mark. If the parties are unable to agree on the scope and timing of such discovery by Monday, August 24, 2009, the parties shall contact the chambers of the Honorable Franklin L. Noel, United States Magistrate Judge, by Monday, August 31, 2009, to establish an appropriate procedure to resolve the dispute.

### III.  CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Pfizer's Motion to Dismiss [Docket No. 9] is GRANTED insofar as Sales Board asserts claims against Pfizer based on the display of the Action Selling—Sneak Peak video on the ITWP website.

2. Sales Board's claims against Pfizer are DISMISSED WITH PREJUDICE insofar as they are based on the display of the Action Selling—Sneak Peak video on the ITWP website.

3. Pfizer's Motion to Dismiss [Docket No. 9] is DENIED insofar as Sales Board asserts claims against Pfizer based on Pfizer's alleged use of the ACTION SELLING mark when training its sales representatives.

4. Sales Board shall conduct expedited discovery into the duration of Pfizer's alleged use of the ACTION SELLING mark. If the parties are unable to agree on the scope and timing of such discovery by Monday, August 24, 2009, then the parties shall contact the chambers of the Honorable Franklin L. Noel, United States Magistrate Judge, by Monday, August 31, 2009, to establish an appropriate procedure to resolve the dispute.

Dated:  August 10, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge